[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 47 and the defendant wife, 47, whose birth name is Hawk, married on July 31, 1971 in Arlington, Virginia. The plaintiff has resided in Connecticut continuously for over one year prior to initiating this action for dissolution of marriage thereby satisfying the jurisdictional requirement. They have two children, now both adults.
The plaintiff, a college graduate, with an MBA, began working for GE Capital in July, 1973 where he remained until he was terminated as of January 1, 1997. He remained on severance status through July, 1997 (Defendant's Exhibit O, Layoff Payment Plan). He was hired by his current employer in August, 1997 at an annual salary of $130,000. His current earnings monthly are
(Plaintiff's Exhibit #3):
 Regular pay $10,833.34 Company Car 668.95 Benefit Dollar 116.28 Group Term Life 98.60 ---------- Total Earnings $11,717.18
Less Pre-tax deductions:
Deferred Compensation 3,000.00 SSP (3 items) 784.00 Life insurance 113.10 Disability insurance 141.42 Buy extra days 416.66 -------- CT Page 6542 Total pre-tax deductions 4,455.18 --------- Federal taxable pay 7,262.00 Less taxes 2,743.12 --------- Net Pay $4,518.88 ======== The plaintiff is now stationed in Asia. Any additional living expenses caused by this assignment will be reimbursed to him to the extent necessary to match a U.S.A. budget. Since this appears to create a "wash", the court finds such arrangement does not furnish additional income. The plaintiff is bonus eligible.
The plaintiff's affidavit lists his assets as follows:
1. Joint owned household property $120,000 2. G.E. Interest Trust Money Market 8,600 3. LaSalle Bank 6,000 4. G.E. Pension Plan 84,763 5. G.E. Savings Security Plan 679,291 -------- $898,654 ======= The plaintiff's pension will pay monthly, at age 60, using 50% survivor annuity, $4,444.73 including voluntary PPA and $3,901.68 excluding PPA annuity (Plaintiff's Exhibit #1). PPA balance available for withdrawal is $84,762.93 (Id.). The plaintiff has accounts at G.E. as follows:
 56 U.S. Savings Bonds $5,006 5,874.3209 G.E. Stock 414,874 Money Market Fund 2,799 Mutual Fund 115,763 Long-term Fund 41,882 Short-term Fund 42,456
All valuations are as of October 28, 1997 (Plaintiff's Exhibit #2). He has 1,500 vested options, 375 (@ $43.25,750 (@ $51.0625, and 375 (@ $52.125, and unvested options of 750 vesting on September 25, 1998, and 375 vesting on September 10, 1999. (Defendant's Exhibit N).
The plaintiff's health is generally good although he has inactive tuberculosis discovered about 1996 upon his return from Thailand. He appears to have been infected with the bacteria as a CT Page 6543 result of an affair with an infected Thai woman which began in 1995.
The defendant, who enjoys good health, a high school graduate, was employed by a bank when married. She stopped working outside their home when the younger child, now 20 years old was two years old. She retured to work at the Chase Bank branch in Wilton in January 1991 where she remained until June, 1996 performing teller work.
The parties sold their home in July, 1996. The defendant elected to move to Virginia to live with her mother. At this time, the plaintiff was on assignment in Australia. The defendant traveled to that country in the belief she was joining her husband to effect a reconciliation. It did not occur. After defendant's return to the U.S.A. in November, she eventually found a rental in Wodbridge [sic] Virginia, in September, 1997, a detached house costing $1,400 monthly (Defendant's Exhibit G). The lease expires next September.
The plaintiff handled the family finances throughout the marriage. The $109,000 proceeds derived from the sale of their home was not discussed between the parties.
The defendant is currently employed by George Mason University as a team development course facilitator at $9 hourly. The work is seasonal. She is also a certified E.M.S. technician. The defendant had been a volunteer when living in Wilton. She also worked for the Girl Scouts. Although the defendant has an earning capacity it pales next to the plaintiff's far greater earning capacity. The plaintiff's ability to acquire assets in the future is found to be greater than the defendant's.
A pendente order was entered on October 14, 1997 that the plaintiff immediately pay the defendant $10,000 leaving it to the trial court to determine if the payment should be found to be an advance on the division of assets, or allowance to defend, taxable or non-taxable alimony. This court will make that determination infra.
The defendant lists assets as follows:
1. Checking account $200 2. Savings account 3,500 3. Household goods 20,000 CT Page 6544 4. Auto 4,000 5. Chase pension (Defendant's 2,952 Exhibit L
She has two large liabilities, one to her attorney of $10,000 and the capital gains tax incurred as a result of the home sale. Also, the court notes that on an earlier affidavit the defendant listed the value of the household goods as $120,000 (Plaintiff's Exhibit #5). It is noted that the parties filed joint tax returns through 1996 (Defendant's Exhibit B).
The court has concluded that the plaintiff's protracted periods of time away from home while on various assignments around the world greatly strained the marriage. The plaintiff's affair in Thailand caused the breakdown to be irretrievable.
The court finds the defendant's proposed division of assets allocating 85% to the defendant to be unreasonable and to do so would be inequitable. The court finds the plaintiff's proposed orders to be equally unreasonable. There is no basis for "rehabilitative" alimony in the facts of the present case,Ippolito v. Ippolito, 28 Conn. App. 745. The plaintiff's suggested payments are penurious. Claims for relief serve no useful purpose when they are patently inequitable.
Having reviewed the evidence in light of the applicable statutes and case law and having assessed the credibility of the parties' testimony, the court enters judgment dissolving the marriage on the ground of irretrievable breakdown. As part of the judgment, the following orders are entered.
1. The $10,000 payment ordered on October, 1997 is determined to be non-taxable temporary periodic alimony as are the voluntary payments made by plaintiff to defendant since that time.
2. The plaintiff shall pay to the defendant, as periodic alimony, taxable to the defendant, the sum of $1,000 weekly until the death of either party, the remarriage of the defendant, or future court order. The provisions of § 46b-86 apply to this order. A contingent wage withholding order is entered.
3. The plaintiff shall cooperate with the defendant if she elects to continue medical coverage pursuant to the COBRA legislation. CT Page 6545
4. The defendant is awarded 50% of the G.E. pension. The court retains jurisdiction to sign any QDRO order necessary to effect this assignment to the defendant.
5. The defendant is awarded 50% of each of the plaintiff's G.E. accounts as set out on Plaintiff's Exhibit #2. This division orders each account or item to be divided in kind 50/50, by current dollar amounts. The court retains jurisdiction to make any additional order, QDRO or otherwise necessary to effect these transfers.
6. The plaintiff shall retain his stock options, vested and unvested, as his sole property.
7. The defendant shall retain the tangible personal property, furniture, and furnishings now in her possession as her sole property.
8. The plaintiff shall retain any items of tangible personal property in his possession as his sole property.
9. The plaintiff shall retain his remaining assets not mentioned in the above orders as his sole property.
10. The defendant shall retain her assets as her sole property.
11. The plaintiff shall be solely responsible for his debts.
12. The defendant shall be solely responsible for her debts.
13. No allowance to defend is awarded since the foregoing orders provide the defendant with funds sufficient to pay her litigation expenses.
14. The defendant's counterclaim is dismissed as moot. Counsel for the plaintiff is directed to draft the judgment file. Both counsel and their clients are directed to cooperate in processing the documents required to effect the property assignments.
HARRIGAN, J. CT Page 6546